02D09-2108-CT-000427
USDC IN/ND case 1:21-cv-00337-HAB-SLC   document 6   filed 08/12/21   page 1 of 6
Filed: 8/12/2021 10:51 AM
Clerk
Allen County, Indiana
SW
Allen Superior Courts

| | | |
|---|---|---|
| STATE OF INDIANA ) | | IN THE ALLEN SUPERIOR COURT |
| ) SS: | | |
| COUNTY OF ALLEN ) | | CAUSE NO._____ |

| | |
|---|---|
| TRICIA GOODE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| PARKVIEW HOSPITAL, INC. | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

Plaintiff alleges against Defendant as follows:

1. Plaintiff is Tricia Goode, a qualified employee of Defendant at all times material to this Complaint. Plaintiff alleges that she was subjected to discrimination and retaliation in violation of the Family Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq.* ("FMLA").

2. The Defendant is Parkview Hospital, Inc., a company doing business at 2200 Randallia Drive, Fort Wayne, IN 46806. Defendant is an "employer" for the purposes of the FMLA.

3. Plaintiff has been an employee of Defendant since approximately October 20, 2013. Plaintiff's job title is "Telecommunications Operator."

4. Plaintiff first applied for and was approved to utilize intermittent FMLA to take time off work when needed to tend to her serious medical condition on or about September 19, 2017.

5. On October 18, 2017, her supervisor Heidi Griebel called her into the office and told Plaintiff she had to sign a First Written Warning related to attendance and days Plaintiff had missed for the preceding year. Over half of the alleged dates were false. Plaintiff

–1–

signed under protest, and when she told Heidi that she intended to take the matter to HR Heidi told her "never mind, tear it up." Plaintiff includes this incident in this Complaint to simply demonstrate that the retaliation has been ongoing since the implementation of Plaintiff's FMLA, though Plaintiff acknowledges this is outside the time frame for which an action can be brought.

6. For three years prior to applying for the FMLA coverage Plaintiff worked overtime regularly, and often worked up to 70 hours most weeks. After being approved for intermittent FMLA, Heidi refused to allow Plaintiff to work any overtime, unless no other employee could be found to work a shift. Employees sign up for additional shifts on "Extra Hours" and the "On Call Sheet," and though Plaintiff signed up every week for extra hours, she was denied.

7. On February 20, 2019 Plaintiff inquired via email why she was not being permitted to work the hours for which she had volunteered, and Heidi responded "if you call in and have signed up for extra hours, we are sometimes trying to fill 2 shifts" and "being on medical leave and working extra shifts probably isn't a good idea until you are feeling better again."

8. Plaintiff continued to sign up for extra hours, and later learned that Heidi was calling employees who had not signed up for extra shifts attempting (and was usually successful) to get them to agree to cover the shifts Plaintiff had signed up for.

9. On one occasion Plaintiff offered to cover a holiday shift for another employee who wanted the day off, and Heidi told Plaintiff she could not have the shift. When Plaintiff pressed and asked for an explanation, Heidi became irate and started screaming, to the point that another employee had to intervene, and told Plaintiff that the other employee had to work

the holiday due to policy, but this reason was false and just another example of retaliation.

10. The only extra shifts Plaintiff is permitted to pick up are shifts that Heidi is unable to find coverage for, and Plaintiff only learns of the extra shifts a day before or at the last moment, because Heidi makes every attempt to find someone else to work besides Plaintiff.

11. Further, Plaintiff is treated with hostility by coworkers who complain of her use of FMLA, and when Complainant calls in to work to notify them when she must utilize a day off work pursuant to the FMLA, she is hung up on, questioned inappropriately, and notes such as "called off AGAIN" are entered into the computer by coworkers regarding her absences. By information and belief, Plaintiff believes that management encourages the disparaging and humiliating treatment by coworkers in that management also participates in behaviors directed towards Plaintiff in retaliation for utilizing time off work pursuant to the FMLA.

12. Plaintiff has complained to management multiple times regarding the hostility of coworkers because she utilizes the FMLA, but nothing has been done to stop the treatment.

13. Plaintiff, who works third shift, has applied multiple times for a first shift position whenever one comes available, and approximately four times since she filed for FMLA has been denied the opportunity to work a different shift by Heidi.

14. In February 2021, Plaintiff again applied for an available first shift position (three were available). One other employee, Esperanza, also applied for one of the positions, and a second employee, Dominic, was asked to apply for one of the positions by Heidi. Though Dominic did not really want the position, he applied anyway. Hope and Dominic both were hired, but Plaintiff was not. No one applied for the third position other than Plaintiff.

15. Dominic quit his position shortly thereafter in April 2021, and an email was sent to staff

inquiring whether anyone wanted the position. Plaintiff responded that she did, but the position was never filled and was not offered to Plaintiff.

16. Plaintiff believes that Defendant's failure to allow Plaintiff to move to a different shift is related to the Defendant's recently announced intention to shut down third shift; if Plaintiff is not allowed to move to a new shift, her position will be allegedly "eliminated," so it is imperative that Plaintiff be permitted to change shifts, or Defendant will terminate Plaintiff. If Plaintiff's position is in fact eliminated, and Plaintiff is not permitted to move to an open position on another shift (there are currently positions available), the separation from employment will be attributable to Defendant's disdain for Plaintiff's use of the FMLA, and will be further evidence of retaliation, as Plaintiff is qualified and eager to accept an open position on another shift.

17. Also in April, Plaintiff was taking part in a virtual meeting being run by Kathy Robins, head of her department, while at home with COVID-19.  Kathy was unaware that Plaintiff was on the line.  Kathy announced to the group that she "knows it's frustrating when an employee uses FMLA" and that she had discussed with HR whether "this employee" could be fired, "but there was nothing [she] could do." Plaintiff is the only person in her department, by information and belief, that utilizes the FMLA.  This caused Plaintiff embarrassment, humiliation, emotional distress, and anxiety.

18. On May 19, 2021, Plaintiff was called into a meeting with Kathy and Heidi, purportedly about an available position.  When Plaintiff arrived for the meeting, she was disappointed to learn that rather than discussing a first shift position, the meeting instead pertained to her usage of FMLA.  Plaintiff was told that her FMLA protection had been "terminated,"

and she was no longer eligible to use it.  However, they were mistaken.  Plaintiff had short-term disability/FMLA due to having Covid (which is what was terminated) but her intermittent FMLA was still in effect.   Kathy and Heidi realized their mistake, and at that point Plaintiff asserted a complaint that she was being discriminated against because of her FMLA usage, and she was tired of it. Kathy stated "I can't control other people."  Heidi admitted that Plaintiff should have been given a first shift position but was unapologetic about Plaintiff not being accepted into the position.   The meeting was never about a move to a daytime position, instead the two supervisors wanted to make sure Plaintiff knew her FMLA had ended—even though it had not.

19. May 25, 2021 Plaintiff went to Defendant's corporate office and met with Kacie Pulfer, HR, to complain of the retaliation by both management and coworkers.  Plaintiff was told an investigation would take place.

20. Following the meeting nothing changed. Plaintiff continues to be retaliated against for utilizing time off work pursuant to the FMLA in that she is not allowed to work extra shifts unless no one else can cover them, has not been permitted to move to any other shift despite the applications she submitted for positions available on those shifts, and is treated with disdain by management and coworkers alike.

21. Plaintiff contends that the retaliation she has suffered for utilizing the FMLA is the direct and proximate cause of her suffering the loss of income (wages). She seeks compensatory damages and reasonable attorney fees and costs.

22. Furthermore, as Defendant's actions have been deliberate and knowingly in violation of the FMLA, Plaintiff also seeks liquidated damages.

WHEREFORE, Plaintiff prays for judgment against the Defendant for compensatory damages, liquidated damages, reasonable attorney fees and costs, and all other just and proper relief.

## JURY DEMAND

Pursuant to Rule 38 of the Indiana Rules of Trial Procedure, Plaintiff demands a trial by jury in this action.

Respectfully submitted,

**LAW OFFICE OF JENNIFER L. HITCHCOCK**

/s/ Jennifer L. Hitchcock
Jennifer L. Hitchcock, #34635-02
116 E. Berry Street, Suite 625
Fort Wayne, IN 46802
Telephone: (260) 240-4644
Facsimile: (260) 498-2655
E-mail: Jennifer@jhitchcocklaw.com
Attorney for Plaintiff